IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MERCK & CO., INC., ) | |
| ) | |
| Plaintiff and Counterclaim Defendant, ) | |
| ) | |
| v. ) | C.A. No. 07-229 (GMS) |
| ) | |
| RANBAXY INC., and RANBAXY ) | |
| LABORATORIES LIMITED, ) | |
| ) | |
| Defendants and Counterclaim Plaintiffs. ) | |

**NOTICE OF RULE 30(B)(6) DEPOSITION OF
RANBAXY INC. AND RANBAXY LABORATORIES LIMITED**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Merck & Co., Inc. ("Merck") will take the deposition of Ranbaxy Inc. and Ranbaxy Laboratories Limited (collectively "Ranbaxy") by oral examination on the topics listed on the attached Schedule A.  Ranbaxy shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, on those topics.  The deposition shall take place beginning at 9:00 a.m. on April 16, 2008, continuing from day-to-day until completed, at the offices of Jenner & Block LLP, 919 Third Avenue, 37th Floor, New York, New York 10022, or at such other place and time as may be agreed to by the parties.

The deposition will take place before an officer authorized to administer oaths and may be recorded via videotape and stenographic means.

- 2 -

          MORRIS, NICHOLS, ARSHT & TUNNELL LLP

          */s/ Mary B. Graham*
          _____
          Mary B. Graham (#2256)
          James W. Parrett, Jr. (#4292)
          1201 N. Market Street
          P.O. Box 1347
          Wilmington, DE  19899-1347
          302.658.9200

          *Attorneys for Merck & Co., Inc.*

OF COUNSEL:

Raymond N. Nimrod
Gregory D. Bonifield
JENNER & BLOCK LLP
919 N. Third Avenue
37th Floor
New York, NY  10022-3908
212.891.1600

Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL  60611-7603
312.222.9350

Paul D. Matukaitis
Charles M. Caruso
MERCK & CO., INC.
One Merck Drive
Whitehouse Station, NJ 08889-0100

Edward W. Murray
MERCK & CO., INC.
126 E. Lincoln Avenue
Rahway, NJ 07065-0907

Dated:  March 21, 2008
2164751

# SCHEDULE A

### DEFINITIONS

1. "Ranbaxy's ANDAs" means the ANDAs that Ranbaxy has filed covering its injectable products containing imipenem and cilastatin.

2. "Ranbaxy's ANDA products" means the pharmaceutical composition products that are the subject of any of Ranbaxy's three ANDAs relating to injectable products containing imipenem and cilastatin, including any component contained in or used with the ANDA products, such as imipenem, cilastatin, any inactive ingredients, diluents, packaging, and materials used to administer the ANDA products to patients.

### MATTERS FOR EXAMINATION

1. Ranbaxy's decisions to file Ranbaxy's ANDAs, including without limitation the considerations leading up to those decisions, the issues considered, the resolution of issues considered, the identity and roles of each person involved in those considerations or decisions, and identification of related documents.

2. Ranbaxy's knowledge and analysis of U.S. Patent No. 5,147,868 (the "'868 patent"), including without limitation all opinions and advice relating thereto, the identity and role of each person involved, and identification of related documents and including but not limited to the circumstances of Ranbaxy becoming aware of the '868 patent and the subject matter of its claims.

3. The investigation leading to the preparation of Ranbaxy's January 22, 2007 letter (the "January 22 Letter") to Merck concerning the '868 patent, including who was involved in the investigation and when the investigation commenced;

Ranbaxy's assessments, tests, analyses, studies, evaluations, presentations, calculations, investigations, information, and consideration of all issues that formed the basis of the January 22 Letter; the timing of Ranbaxy's decision to send the January 22 Letter to Merck; and any opinions received on the '868 patent that are consistent or inconsistent with the January 22 Letter.

4. Ranbaxy's awareness that U.S. Application Ser. No. 06/188,178 (the "'178 application") was omitted from the chain of applications listed in the Related Application Data on the cover page of the '868 patent or in the first paragraph of the specification of the '868 patent as originally issued; Ranbaxy's awareness of the circumstances surrounding such an omission; Ranbaxy's assessment of the nature, consequences, and correctability of such an omission; any reliance by Ranbaxy on such an omission, including any reliance relating to the decisions to file any of Ranbaxy's ANDAs; and Ranbaxy's awareness that U.S. Application Ser. No. 06/465,577 was a continuation of the '178 application.

5. All research and development relating to Ranbaxy's ANDA products, the identification and role of persons involved, and identification of related documents.

6. Ranbaxy's consideration of alternative formulations or structures to its ANDA products, and any consideration of alternative manufacturing processes or manufacturing process steps for its ANDA products.

7. The bioequivalence of Ranbaxy's ANDA products to Primaxin® including without limitation Ranbaxy's assessments, tests, analyses, studies, evaluations, and calculations relating thereto.

8. Technical or clinical problems in connection with Ranbaxy's ANDA products, including Ranbaxy's assessments, considerations, tests, analyses, studies, evaluations, and other information relating to technical or clinical issues in connection with Ranbaxy's ANDA products.

9. The manufacture of Ranbaxy's ANDA products, the number of production campaigns associated with each of Ranbaxy's ANDA products, and the number of units produced in each of those production campaigns, including Ranbaxy's assessments, considerations, analyses, studies, evaluations, and calculations relating thereto.

10. Problems relating to the manufacture of Ranbaxy's ANDA products or any Ranbaxy products containing cilastatin and imipenem sold in any market outside the United States, including Ranbaxy's assessments, considerations, analyses, studies, evaluations, and calculations relating thereto.

11. Ranbaxy's choice of the site to manufacture Ranbaxy's ANDA products, including Ranbaxy's assessments, considerations, analyses, studies, and evaluations relating thereto.

12. Ranbaxy's assessments, tests, analyses, studies and evaluations relating to the purity, sterility, stability, and shelf life of Ranbaxy's ANDA products or any Ranbaxy products containing cilastatin and imipenem sold in any market outside the United States.

13. All problems and limitations, including but not limited to problems relating to purity, sterility, stability, and shelf life, that Ranbaxy has experienced with

respect to its ANDA products or any Ranbaxy products containing cilastatin and imipenem sold in any market outside the United States.

14. Ranbaxy's projected sales of, profits from, market for, and benefits accruing from its ANDA products, including without limitation Ranbaxy's financial projections, models, spreadsheets, assessments, considerations, analyses, studies, evaluations, presentations, business plans, calculations and other financial information relating thereto.

15. Ranbaxy's pricing, expected pricing and pricing strategy for its ANDA products, including without limitation Ranbaxy's financial projections, models, spreadsheets, assessments, tests, analyses, studies, evaluations, presentations, calculations and other information relating thereto.

16. Ranbaxy's projected launch of its ANDA products, including the timing and scale of its projected launch, and further including launch plans, financial projections, models, spreadsheets, assessments, tests, analyses, studies, evaluations, presentations, and calculations relating thereto.

17. Ranbaxy's consideration or analysis of the potential, projected, or expected impact of the launch or sale of Ranbaxy's ANDA products on the sales, price, and market share of Primaxin®, including Ranbaxy's evaluations or projections relating thereto, and Ranbaxy's consideration or analysis of Merck's ability to restore the prices or market share of its products if Ranbaxy's ANDA products were later removed from the market after launch.

18. Ranbaxy's potential, projected, or expected position of its ANDA products on a formulary by Pharmacy Benefit Managers, Health Maintenance

Organizations, or hospitals, including without limitation Ranbaxy's assessments and considerations relating thereto.

19. Any contemplated purchase by Ranbaxy of the imipenem or cilastatin for Ranbaxy's ANDA products; any specifications Ranbaxy has provided to any imipenem and cilastatin suppliers; any discussions or meetings Ranbaxy has had with such suppliers regarding purchases, purchase agreements, or specifications; and any internal discussions or meetings related to such suppliers regarding purchases, purchase agreements, or specifications.

20. Ranbaxy's communications with the FDA concerning Ranbaxy's ANDAs and Ranbaxy's ANDA products, including without limitation communications relating to sterility; purity; stability; shelf life; quality control; bioequivalence; health and safety; reasons for any FDA concerns relating to approval of Ranbaxy's ANDAs; and approval or launch date.

21. The authenticity of documents concerning Ranbaxy's ANDAs and communications with the FDA relating to those ANDAs.

22. Ranbaxy's sales, and consideration of potential sales, of Ranbaxy products containing imipenem and cilastatin to be sold in any market outside the United States, including, but not limited to, those in Europe and Latin America.

23. Ranbaxy's consideration of regulatory approval, and attempts to obtain regulatory approval, of Ranbaxy's products containing imipenem and cilastatin in any market outside the United States, including, but not limited to, those in Europe and Latin America.

24. Any Ranbaxy patents or patent applications that claim or disclose any dipeptidase inhibitor or any thienamycin-type antibiotic.

25. Any actual or contemplated Ranbaxy product containing any dipeptidase inhibitor or thienamycin-type antibiotic other than Ranbaxy's ANDA products.

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

>Frederick L. Cottrell , III, Esquire
>RICHARDS, LAYTON & FINGER, P.A.
>
>Kelly E. Farnan, Esquire
>RICHARDS, LAYTON & FINGER, P.A.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on March 21, 2008 upon the following individuals in the manner indicated:

**BY EMAIL**

Frederick L. Cottrell, III, Esquire
Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.

**cottrell@rlf.com**
**farnan@rlf.com**

**BY EMAIL**

Mark Boland, Esquire
SUGHRUE MION PLLC
**mboland@sughrue.com**

Michael R. Dzwonczyk, Esquire
SUGHRUE MION PLLC
**mdzwonczyk@sughrue.com**

Chid S. Iyer, Esquire
SUGHRUE MION PLLC
**ciyer@sughrue.com**

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

932280